Tommy Loverd **WATSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43614.

Court of Criminal Appeals of Texas.

April 27, 1971.

Rehearing Denied June 2, 1971.

784

H. L. Edwards, Nacogdoches, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

The brief of our able State's Attorney is adopted as the opinion of the Court.[1]

"The appellant was convicted in the District Court of Nacogdoches County on June 11, 1970, of assault with intent to murder with malice aforethought, and his punishment was assessed by the jury at confinement in the penitentiary for a term of ten years.

"Briefly stated, the facts in the case show that Officers Whitfield and Saxton of the Nacogdoches police department were on routine patrol at approximately 1:55 on the morning of October 8, 1969, in the city limits of Nacogdoches when they were run off the road by an approaching vehicle. They turned around and followed the vehicle at speeds up to 100 miles per hour. The pursuit carried them approximately 9/10th of a mile outside of the city limits, where the defendant pulled up to a house. They observed him get out of the car and

1. References to some of the page numbers and formal parts are omitted.

noted that he appeared to be under the influence of intoxicating liquor. They then pursued him into a house and into the back bedroom of the house. At this point the appellant's father pulled a pistol and forced the officers to leave. While the officers were standing in front of the house talking to the appellant's father and informing him that the appellant was under arrest, the complaining witness [Officer Whitfield] heard appellant say, 'I'm going to kill that four eyed so-- o- a b----.' At that point the appellant came out of the house to the porch with a shotgun. He then looked at the complaining witness and said, 'I'm going to kill you, you so-- o- a b----.' The appellant then pulled his gun up, and the officer started to take his gun out when the appellant's mother came out on the porch, grabbed hold of the shotgun, and took the shotgun out of appellant's hands. At the time this occurred the officers were standing a few feet from the front porch talking to the appellant's father.

■ "Appellant complains that the trial court erred in overruling the defendant's motion to redraw the jury in this cause. In making this allegation, the appellant refers to Transcript pages 31, 38 and 46. Page 31 of the Transcript contains the defendant's original motion for new trial, in which he makes an allegation that the trial court refused to redraw the list of jurors. Page 38 of the record contains a motion to quash the jury panel. It appears that the motion to quash is based upon the refusal of the trial court to redraw the jury. The motion to quash the jury panel was overruled. Although the motion to quash the jury panel was overruled, the record in this cause does not affirmatively establish that the jury was not formed in accordance with Article 35.11, V.A.C.C.P. Since the allegations in the motion for new trial and in the appellant's motion to quash the panel are not self-proving, the record in this cause does not show that the jury was formed in violation of any provision of the Code of Criminal Procedure. For this reason, no error is reflected.

■ "The appellant contends that the evidence in this cause is insufficient to support the verdict of the jury because it fails to show that the appellant had the specific intent to kill. The record clearly reflects that the appellant stated that he was going to kill 'that four eyed so- o- a b----.' He then came out of the house onto the porch with a shotgun and looked at the complaining witness and again stated, 'I'm going to kill you, you so- o- a b----.' The appellant then pulled his gun up, and his mother came out on the porch and grabbed hold of the shotgun and wrestled him for it and took the shot gun out of his hands.

"Another officer testified that the appellant leveled the shotgun at Officer Whitfield and stated, I'm going to kill the s-- o- a b----.' At that point a lady came out of the house and jerked the shotgun up and pulled the appellant back into the house. The appellant claimed that these events did not occur.

"When reviewing this evidence in the light most favorable to the jury verdict, it is clear that the appellant committed an assault upon the officer by use of a 'threatening gesture showing in itself or by words accompanying it, an immediate intention, coupled with ability to commit a battery. * * *' Article 1138, V.A.P.C. The only question which the jury had to decide was whether or not this assault was committed with intent to murder. In Streets v. State, [148 Tex.Cr.R. 517] 188 S.W.2d 582, the Court found that the evidence was sufficient to show intent to kill where the testimony of the complaining witness showed that the appellant, while cursing and threatening to kill, pointed a pistol at close range at the complaining witness and snapped it. The Court held that, according to the State's witnesses, the appellant was doing what he could to kill, with that specific intent, when he pulled the trigger of a loaded pistol. Proof .of the fact that the pistol failed to fire prevented appellant from carrying into execution his intent to kill could not be said to show a lack of intent to kill. The Court also reiterated the rule

that it is not conclusive that an assault was not with intent to murder because it was upon a rash and inconsistent impulse and the assailant did not follow up his victim, though there was nothing to prevent it.

"In comparing the holding in Streets v. State, supra, to the instant case, it is readily apparent that the evidence would have supported the jury's finding in this case even if the appellant's mother had not prevented him from carrying out his threat and the appellant had stopped at this point of his own volition. Since the assault was complete at the time the appellant made the threatening gesture, showing by words and immediate intention to commit a battery, coupled wih the ability to commit a battery, the jury could have determined that he had the specific intent to kill at that time and was therefore guilty of the offense, no matter what his subsequent acts were.

"Appellant complains that the trial court erred in not charging the jury that the complaining witness in this cause was a trespasser, unlawfully upon the appellant's premises at the time and place of the assault and arrest.

"It should be noted that the court charged fully upon the appellant's right to prevent an unlawful attempt to enter upon the land, premises or home of the appellant against his consent and upon appellant's right to defend his father from an unlawful attack. The court also instructed the jury that the appellant had the right to resist an unlawful arrest.

"The evidence in this cause clearly shows that the appellant had committed an offense within the view of the complaining witness, a peace officer, and the officer had the authority to make an arrest. Article 14.01, V.A.C.C.P. The fact that their pursuit led them out of the city limits before the arrest was concluded did not limit their authority to make the arrest. Minor v. State, [Tex.Cr.App.,] 219 S.W.2d 467; Fance v. State, [167 Tex.Cr.R. 32,] 318 S.W.2d 72. The appellant cites no authority, and the State knows of none, which would make the officers trespassers under these circumstances.

"Furthermore, the charge requested by appellant that the officers would be trespassers would constitute a comment upon the weight of the evidence by the court, and would therefore be improper."

For the reasons set forth, in the brief as adopted, the judgment is affirmed.